VIVIAN ADAMS, RESPONDENT, v. PAUL LEBOW, APPELLANT.—160 S. W. (2d) 826.

Kansas City Court of Appeals. February 16, 1942.

*Robt. M. Murray* and *Benj. A. Babb* for respondent.

*Mosman, Rogers & Bell* for appellant.

CAVE, J.—This is an action for personal injuries sustained by plaintiff on February 13, 1940, when she fell from the front seat of an automobile in which she was riding as a guest, and which was being driven by defendant. Plaintiff had a verdict and judgment for $4250, and in due course defendant appealed and seeks to reverse that judgment. The suit was originally against one George C. Carson, the owner of the car, and Paul LeBow, the driver. At the conclusion of plaintiff's evidence the court gave a peremptory instruction, offered by defendant, Carson, and plaintiff took an involuntary nonsuit as to him. The case was tried and submitted on the doctrine *res ipsa loquitur*. The petition alleged that, plaintiff, having been invited by Paul LeBow to ride as a guest and passenger in the car, and having accepted said invitation, and after taking a seat in the car, and while the same ''was being operated as aforesaid she was, through the combined negligence and carelessness of defendants, LeBow and George C. Carson, caused and permitted to be thrown from said automobile on account of the door thereof opening.'' After demurrers and motions to make petition more definite and certain had been overruled the defendants filed separate answers; both were general denials.

Defendant urges (a) that the court erred in refusing his peremptory Instruction "C" offered at the close of all the evidence in the case for the reason plaintiff failed to make a submissible case under the *res ipsa loquitur* doctrine, because the evidence did not show that defendant LeBow was in the exclusive possession of the automobile; at best the evidence shows that if the door opened by reason of some negligence it could only have been the negligence of Carson, the owner, and not LeBow; (b) that the court erred in giving plaintiff's Instruction "I" for the reason that the evidence was not sufficient to support the *res ipsa loquitur* doctrine as to this defendant; (c) that the court erred in refusing defendant's Instructions "E" and "F."

The evidence disclosed that George C. Carson was an undertaker, with a place of business in Independence, Missouri, and the owner of a 1935 Packard seven-passenger sedan automobile; that he had purchased it secondhand two years before the accident; that it was a funeral car and was used for the purpose of hauling the families of deceaseds at funerals; that the doors of the car opened from the front toward the back; that defendant LeBow was an employee of Carson; that on the day before the accident Carson had been requested by another undertaker in Kansas City to send a car the next morning for the purpose of transporting persons attending a funeral at his funeral parlors in Kansas City; that Carson instructed LeBow to take the car to that place in Kansas City; that the next morning, about 7 A. M., LeBow got the car and went by and got a Miss Gault, who was his friend, and who worked at Sears-Roebuck & Company, and started west on Maple Street and there saw Miss Adams, the plaintiff, standing on the street corner waiting for a bus; that Miss Adams and Miss Gault were friends, both working at the same place; that LeBow did not know Miss Adams; that they asked the plaintiff if she would like to ride to work and she replied that she would be glad to, and she got into the front seat of the car; that Lebow was driving, Miss Gault sat in the middle and plaintiff on the right side next to the door; that she did not recall whether she closed the door when she got in or whether someone else did, but before the car started it was noticed that the door had not shut "flush against the jamb;" that the latch had caught but the door was not completely shut. When that was noted LeBow reached across in front of her and took hold of the handle of the door and closed it tight and said, "the door had been giving them a little trouble and we had better let him shut it over," or he said, "he had been having trouble shutting it, that the door hadn't been shutting properly." When he closed the door at that time, so far as she could see, it closed completely; that they drove one block west to River Boulevard where LeBow stopped at a stop sign, and she said he again reached over and opened the door and shut it, although, so far as she could see, it did not appear to be loose or

open at all and did not rattle; that he said nothing at that time. They then turned north and drove one block to Van Horn Road and then turned west on Van Horn Road and had driven about one-half mile when the right front door suddenly came open and plaintiff fell to the pavement. After getting into the car she had been sitting in a straight, upright position with her feet out in front of her, with her pocketbook in her lap and her hands on it, watching the driver and the traffic. She said the automobile was traveling about thirty-five miles per hour; that defendant was watching his business and that she had no complaint of his driving or anything he did; that the car was going in a perfectly straight course and that it did not swerve or hit any bump or suddenly start or stop; that she was not touching the door and didn't notice any rattle about the door, it seemed to close securely. This was the only time she ever rode in this car. After she fell out the defendant very promptly put her in the car and took her to a nearby hospital. It was in evidence that the defendant had driven this car on various occasions prior to the accident, but that it was not his duty to keep the car in good repair; that he was not a mechanic. Another employee of Carson's, who was a mechanic, was charged with the responsibility of making repairs on cars and in keeping them in condition.

The defendant produced a number of witnesses who testified in substance that they had examined the right front door of this car; either immediately or shortly after the accident, and found it in good working condition, and that when the door was closed it would stay closed; that they did not detect any mechanical defects in the door or the parts which cause it to fasten and remain so.

In rebuttal plaintiff produced Emmett Thomas, an automobile mechanic, who testified that, at plaintiff's request, he examined the door about April 18, 1940, which was about two months after the accident and before suit was filed, and found that there was a round-headed screw in the lock of the door which was too large for the screw hole and which caused the head of the screw to protrude out far enough to make a mark on the door-jamb; that the lock spring was weak and the handle had a tendency to hang down. He further testified that he again examined the door during the trial, about March 5, 1941, and found the wood back of the door plate was rotten and the screws would not tighten.

Witness O'Malley testified that he examined the door and found that one of the screws in the plate would not tighten and that the whole latch was loose but that the door would close and stay closed, but he did not try to pull it open.

In general the doctrine *res ipsa loquitur* does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use ordinary care; (b) the instrumentalities involved were under the management and control of

the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence. With these general principles in mind, we approach the question which has been somewhat perplexing to the courts in defining and applying the doctrine; and in seeking a correct solution to the questions urged, we must also keep in mind the well-established rule that one operating a motor vehicle on the highway has the duty to exercise the highest degree of care in its operation and this duty applies to one riding therein as a guest as well as to a passenger for hire; and that such requirement applies to a *res ipsa* case as well as one of the specific negligence. [Sec. 8383, R. S. 1939; Tabler v. Perry (Mo.), 85 S. W. (2d) 471; Kaley v. Huntley, 333 Mo. 771, 63 S. W. (2d) 21.]

The evidence discloses that after the defendant had closed the door it appeared to be securely fastened, and as he drove along the highway at about thirty-five miles per hour, and without any apparent reason, so far as the plaintiff could see, the door suddenly came open, causing her to fall to the pavement. We think this is such an occurrence as would not ordinarily happen if those in charge used due care. Our attention has not been called to any Missouri case, and we have found none, where the door of a privately owned automobile suddenly came open, resulting in injury to the guest, has been declared to be such an unusual occurrence that *res ipsa loquitur* would apply, but our courts have many times declared that the unusual movement of an automobile, such as leaving the highway, is such an occurrence as will make the doctrine applicable. [Vesper v. Ashton, 118 S. W. (2d) 85; Tabler v. Perry, 337 Mo. 854, 85 S. W. (2d) 471; Mackler v. Barnert, 49 S. W. (2d) 244.] Our courts have applied the doctrine under many various state of facts and for a collection of most of the authorities on the subject, we refer those interested to the cases of McCloskey v. Koplar (Mo.), 46 S. W. (2d) 557; Evans v. Mo. Pac. R. R. Co. (Mo.), 116 S. W. (2d) 8; Tabler v. Perry, *supra*.

In the case of Roberts v. Economy Cabs, Inc., 285 Ill. App. 424, the court had under consideration a case where a door of a taxicab came open and threw plaintiff to the street, and held both the driver and owner liable under *res ipsa loquitur* rule. The question of the maintenance of the equipment was also involved. We quote certain pertinent parts of that opinion:

"This record discloses that there was nothing in any way unusual about the working, the handling or the driving of this taxicab. It further discloses that appellee was doing what an ordinary prudent person would have done under the same or similar circumstances. There is no proof of negligence on the part of appellants; there is no proof of contributorp negligence on the part of appellee. This judgment must stand or fall on the theory of *res ipsa loquitur*.

"When a thing which caused an injury is shown to be under the management of the party charged with negligence and the accident is

such as in the ordinary course of things will not happen if those who have such management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the parties charged, that it arose from want of proper care.

"Applying the definition above given by our courts to the maxim of *res ipsa loquitur* we find that appellants were in sole charge of the instrumentality which caused the injury. We find a thing happening which will not happen if those who have the management of the equipment use proper care, particularly the highest degree of care. This state of fact, together with the circumstances of the injury seem to us to justify the application of the maxim. This is not because an injury occurred but because it occurred under the circumstances under which it did occur. It is urged that to say what caused the injury in this case is speculative. In a sense all causes of injuries to which the maxim is applied are speculative. It is never known just what causes the injury. If it could be ascertained by investigation, there would be no need of the maxim."

We do not believe defendant seriously contends that the sudden opening of the door is not an unusual occurrence, but he does seriously contend and ably argues that the defendant did not have such *ex-clusive control* of the car as to make him liable under the *res ipsa loquitur* rule because he was merely the driver of the car at the time of the occurrence and did not have the duty or responsibility of repairing or having repairs made on the same. Defendant's evidence was to the effect, and it was undisputed, that this duty was to drive the automobile, and that it was not his duty to look after the maintenance thereof because his employer had a mechanic employed for that purpose. We do not believe this contention is sound under the facts in this case. LeBow had the exclusive physical management and control of the car in so far as the plaintiff was concerned and possessed superior knowledge or means of ascertaining the cause of the door suddenly coming open. Under the facts present here we believe the term exclusive control would apply to the employee who had actual physical control and operation of the car as well as to some person, the employer, who had the right of control. [McCloskey v. Koplar, 46 S. W. (2d) 557, l. c. 560.] To support his contention the defendant largely relies upon the case of Randazzo v. Wheaton (Mass.), 180 N. E. 303. In that case the suit was against the wife of the owner of the automobile. She was alone in the car and as she came to the curb adjacent to where the plaintiff was standing on the sidewalk, hot water boiled from the radiator, injuring him. Immediately after the accident she stated that she knew the fan belt on the car was old and that the car had been heating. She further testified that it was afterwards discovered that engine trouble caused the overheated water; that she did not discover the trouble before she drove into Quincy

and had no knowledge of it. The court found that no one testified that the fan belt was not working properly at the time of the accident or that it was defective; that the defendant's knowledge that the fan belt was old would not justify a finding of negligence on her part in not anticipating and guarding against such an accident as happened. The language of that opinion, which the defendant quotes and relies upon, is as follows:

"The plaintiff cannot maintain his contention that the doctrine of *res ipsa loquitur* applies to the facts in this case. Without considering other objections to the application of that doctrine, it is inapplicable because the plaintiff has failed to show that the defendant had such exclusive control of the automobile that she could be found to be negligent merely because of the happening of the accident. The mere fact that she had such temporary control of the automobile as any person may have who operates the motor vehicle of another is not the exclusive control which must exist as a prerequisite to the application of the doctrine of *res ipsa loquitur*."

We believe that case is to be distinguished from the instant case on the facts. The evidence in this case discloses that the defendant had frequently driven this automobile for his employer, and on other occasions for pleasure, and when he invited the plaintiff to ride he knew the right front door was defective because the evidence shows that after she had gotten into the car he stated that she had better let him close the door because it had been giving them trouble, and he proceeded to close it in his own way; after driving one or two blocks he again examined the door to see if it was properly closed, or as he stated in his signed statement given after the accident, that "I reached over in front of the girls again and pushed the door with my hand to see if it wouldn't drop out to the second latch. It didn't. I thought the door was shut tight, and drove on. . . ." Certainly such evidence justifies the conclusion that defendant possessed superior knowledge or means of information as to the cause of the occurrence. We think such evidence clearly distinguishes this case from the Massachusetts case, *supra,* and we do not believe the defendant can be said to merely have had "temporary control" of the automobile.

The defendant argues that the evidence also discloses that it was later discovered that the latch which fastened the door when it closed was loose and that the screws which fastened the latch to the door would not tighten, due to rotten wood, and from that premise he argues that the defective condition of the door was due to the negligence of some one other than the defendant and, therefore, the defendant would not be liable because of such other person's negligence. He cites that line of cases holding that where the casualty may result from the negligence of two or more persons the doctrine *res ipsa loquitur* does not apply. Some of such cases are: Estes v. Estes, 127

S. W. (2d) 78; State ex rel. Trimble, 322 Mo. 318, 18 S. W. (2d) 4; McGarth v. St. Louis Transit Co., 197 Mo. 97; Rice v. C. B. & Q., 153 Mo. App. 35. A reading of those cases will, we think, distinguish them from the case under consideration. In the Estes and State ex rel. v. Trimble cases, *supra,* the evidence disclosed that the automobile in which the guest was riding collided with another vehicle being driven on the street by some third person, and the Supreme Court, in the Trimble case, said, "The collision in the instant case may bespeak negligence, but it does not locate the negligence." In the McGarth case the court held that "the inferences are at least equal as to whether the accident was the result of the negligence of the deceased, or of the defendant;" and held that where all the facts in connection with the accident fail to point to the negligence of the defendant as the proximate cause of the accident, but show a state of affairs where an inference could be as reasonably drawn that the accident was due to a cause or causes other than the negligent act of the defendant, then the plaintiff cannot rely upon the mere proof of the surrounding facts and circumstances of the accident. We do not believe those cases rule the point in this case because there was no evidence of negligence on the part of the plaintiff or of any third person intervening or contributing to the accident. When or how the door latches became defective, or whether some mechanic negligently failed to repair them, is not decisive of this defendant's negligence.

If the defendant had possession and control of the automobile at the time of the accident and had knowledge of the defects in the door at that time, we must conclude that he possessed superior knowledge or means of information as to the cause of the accident.

Defendant also argues that plaintiff rode in the car and had as much knowledge or means of knowledge as the defendant concerning the cause of the accident. To support that contention he cites Johnson v. Ostrom (Cal.), 16 Pac. (2d) 794. We do not consider that case in point. There plaintiff was riding in the car which was being driven at a high rate of speed and traveling from one side of the road to the other until it ran off of the pavement and turned over. The cause of the accident was clear and the plaintiff knew the facts as well as the defendant. However, in this case there is no evidence that the plaintiff knew what caused the door to suddenly open; she testified she did not know. The car was being driven down the highway about thirty-five miles per hour and nothing unusual occurred or appeared until the door came open. Although she knew, from what defendant had said, that the door had been causing some trouble, it cannot be said that she knew the reason therefor, or that she knew the door would likely come open when it appeared to be securely fastened.

We conclude that the evidence in this case brings it within the *res ipsa loquitur* doctrine, meeting all the requirements laid down by our courts, *viz.,* an occurrence which does not ordinarily happen if

those in charge use due care; and the instrumentalities involved were under the management and control of the defendant; and that the defendant possessed superior knowledge or means of information as to the cause of the occurrence. It therefore follows that the demurrer to the evidence was properly overruled; and that the court did not commit error in giving plaintiff's instruction No. 1, since the only objection made to that instruction is that the evidence was insufficient to submit the case to the jury on the doctrine *res ipsa loquitur*.

Defendant next contends the court committed error in refusing its Instruction E. The instruction is as follows:

"The court instructs the jury that even though you may find and believe from the evidence that there was some defect in the automobile which caused the door to open, yet if you further find and believe from the evidence that Paul LeBow should not, in the exercise of the highest degree of care, have repaired or caused to be repaired such defect, if any, and that it was not reasonably within his duties as an employee of George Carson to repair or cause to be repaired such defect, if any, then in such circumstances, if you so find them, your verdict should be for the defendant, Paul LeBow."

In support of such instruction the defendant cites the case of Varas v. James Stewart & Co., 223 Mo. App. 385, 17 S. W. (2d) 651. We do not consider that case authority for the instruction. In that case the court, in discussing the situation, held the employee was a mere ministerial servant and omitted that which was not within his duties as a servant, and under such circumstances it was merely nonfeasance and, therefore, he was not liable. But since we hold that the defendant in this case had the management and control of the vehicle at the time of the accident, and that such management and control imputed to him superior knowledge or means of information as to the cause of the accident, then, in a *res ipsa loquitur* case, it would make no difference whether he had the duty or authority to repair the defect which might have caused the accident and which was later discovered. Defendant ably argues in his brief that the evidence does not disclose that the defect in the door was what caused the accident, or, at least, does not make it clear that that is what caused the accident. That is true, and if the evidence had made it perfectly clear what the negligence was, then there would be no case under the doctrine *res ipsa loquitur*. [Conduitt v. Trenton Gas & Electric Co. (Mo.), 31 S. W. (2d) 21.]

It is also claimed that the court committed error in refusing defendant's Instruction F, which instruction is as follows:

"The court instructs the jury that the burden of proof is upon the plaintiff to show by the greater weight of all of the credible evidence in the case that her injuries, if any, were due to and the result of the negligence of the defendant, Paul LeBow. You should not find that Paul LeBow was guilty of negligence from the mere fact of the oc-

currence shown by the evidence, if you further believe and find from all of the evidence in the case that Paul LeBow was not negligent, and if you do find and believe from all the evidence in the case that he was not negligent, then your verdict should be for the defendant, Paul LeBow.''

We must conclude that the refusal of this instruction was erroneous. There was no other burden of proof or similar instruction given. This instruction follows the charted course used and prescribed by the Supreme Court in the case of Harke v. Haase, 75 S. W. (2d) 1001. The plaintiff undertakes to justify the refusal of the instruction on the ground that her evidence "did not merely show 'the fact of the occurrence' . . ., but proved the specific defects in the automobile and the negligence driving of it with knowledge of such defects and defendant did not prove any fact from which the jury could find any other cause of the occurrence." If the plaintiff's evidence was as conclusive on the specific cause of the accident, as she here contends, then there would be no case under the *res ipsa* doctrine because it would then clearly appear from the evidence what negligence brought about the injury and, under such circumstances, there is no place for the application of *res ipsa loquitur.* [Conduitt v. Trenton Gas & Electric Co., *supra.*] Plaintiff concedes that the first sentence in the above instruction is correct under the holding in McCloskey v. Koplar, *supra,* and since the whole instruction is approved in Harke v. Haase, *supra,* we can see no other course than to reverse and remand the cause. It is so ordered. All concur.