J. B. McCLOUD et al., Defendants-in-Error, v. CITY OF
LA FOLLETTE, Plaintiff-in-Error.—276 S. W. (2d) 763.

Eastern Section. June 30, 1954.

Petition for Certiorari denied, September 6, 1954.

554

Boyce Griffith & David B. Rogers, of LaFollette, for plaintiff in error.

Harry B. Brown, of Jellico, and Jno. M. McCloud, of La-Follette, for defendant in error.

HALE, J. This case is improperly styled. Plaintiffs below, J. B. and Jno. M. McCloud, recovered a judgment against the City of LaFollette for $5,000, from which the City prosecutes this appeal.

On March 11th, 1953, a business building owned by the McClouds was damaged by a runaway truck and trailer owned by the City of LaFollette and used for washing streets. This suit followed.

The gist of the negligence alleged is that this truck and trailer was being driven by John Thompson, as agent, servant and employee of the city; that while "unattended" said truck and trailer broke loose and ran down the street, across the sidewalk and into plaintiffs' build-

ing; that the City "through its agent, servant and employee, in a grossly careless, wanton, negligent and unlawful manner, permitted or allowed the said water truck and trailer to run into" plaintiffs' building. Then it was alleged that notice of the accident had been given the City, etc. There were two other counts but they were disregarded by the trial judge and will not be noticed further.

Defendant was required to plead specially. There was a general plea of not guilty. Its special plea asserted, "The truck was owned by the City of LaFollette and at the time of the accident it had authorized no one to use the same except for the purpose of cleaning the streets of the City * * * and, therefore, said truck, at the time of said injury, was being used either without authority or was being used in promoting a governmental function of the City, to wit cleaning strets. The City of LaFollette had no insurance policy on said truck wherein it or any insurer agreed to waive the immunity of law incident to governmental purposes or activities * * *. The defendant denies that said truck negligently was permitted to break loose and run off of the traveled portion of said street, onto the sidewalk and thereupon into a building referred to in the declaration."

A replication was filed charging that the City had obtained insurance on this truck covering property damage caused by it; that such insurance was in the sum of $5,000, but that the insurer had paid $750 to another claimant thereunder. The declaration was also amended to charge the existence of insurance. Defendant then amended its special plea so as to add: "On the other hand, it avers that at the times and places alleged in the declaration, said city water tractor-trailer was being operated in a careful, prudent and lawful manner and

any damages to said building alleged in all counts were not in any manner the fault of the defendant or any person acting for it.''

Trial by jury resulted in a verdict in favor of plaintiffs for $5,000, but collection thereof was limited to the coverage afforded by the policy of insurance aforesaid.

The assignments of error are directed (1) to the sufficiency of the evidence to carry the case to the jury, and (2) errors in the charge given and in denying certain requests.

This truck and tank trailer was owned by the City and registered in its name, as shown by the certificate of registration filed in evidence. There is some little confusion as to the motor or serial number, but it is clear that this was the truck concerned; it was the only one owned by the City. It was used solely for washing the streets of the City except that on one occasion it had been used for the purpose of watering the field at Caryville Park, for which no charge was made.

It was within the exclusive control and management of John Thompson, a fireman of the City, who also attended to the washing of the streets, for which he received $6 per shift in addition to his salary as a fireman. He had been instructed to wash the streets on the night in question. This work was done late at night to avoid traffic congestion. He was observed around 2:30 a. m. with a load of water. About 15 minutes later he was found on East Central Avenue in a disabled condition, his legs being crushed and other wounds on his head ''which looked like he had been rolled in the gravel.'' He died from these wounds about 8:00 a. m. of that same day.

From the point where Mr. Thompson was picked up, there were truck tracks visible which ran down East Central Avenue, which is a ''pretty steep'' down grade,

and then into the side of the McCloud building, which was two and one-half blocks away. It struck the wall with such force that all of the tractor up to the trailer entered the building through the hole knocked therein. No one was with Mr. Thompson and there were no witnesses to the accident. There is no evidence that the truck collided with anything at the place where Mr. Thompson was found. He was in his usual health and was sober. There is of course evidence that would have authorized the jury to have found that he was in front of this truck and that it ran over him. But there is no evidence as to WHY he was in this position, or WHY he did not set his brakes or cut the wheels of this heavy vehicle against the curb on this down grade.

Would this authorize the jury to find he was negligent? Does this bring into play the doctrine of *res ipsa loquitur?*

 The learned and careful trial judge, after charging upon the duty of the driver of a vehicle to use ordinary care in its operation, charged this:

"Now if the thing or instrumentality causing the injury is shown by a preponderance of the evidence to be under the exclusive control and management of the defendant or its servants or employees while acting within the scope of their employment, and the accident is such as in the ordinary course of things does not happen if those who have the control and management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. This does not mean that the jury must infer negligence but merely warrants an inference of negligence which the jury may or may not draw as its judgment under all the facts and circumstances may dictate. It merely permits the jury to consider and choose

the inference of defendant's negligence, if any, in preference to other permissible and reasonable inferences. But if it appears as reasonable, or more reasonable to conclude that plaintiffs' injuries resulted from a cause or causes not alleged by plaintiffs, then the jury could not guess or speculate as to the cause nor find defendant liable if such a situation be found by you to exist.

"If an accident occurred unavoidably, without fault of the defendant or its employees, such as a sudden physical disability unanticipated by the employee or defendant, rendering the operator of a vehicle incapable of control of his vehicle, and there appears no reasonable cause from the proof anticipating such a disability resulting in loss of control, then the operator would not be chargeable with negligence."

There is an exhaustive and profound treatment of this doctrine in Sullivan v. Crabtree, 36 Tenn. App. 469, 258 S. W. (2d) 782, 783, where the Middle Section of this Court, speaking through Felts, J., said:

"The classic statement of the doctrine of *res ipsa loquitur* is this: '(W)here the thing (causing the harm) is shown to be under the management of defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.' Erle, C. J., Scott v. London and St. Katherine Docks Co. (1865), 3 H. & C. 596, 159 Eng. Reprint 65, 667.

"This statement has been accepted in our cases. John Bouchard & Sons Co. v. Keaton, 9 Tenn. App.

467, 479; North Memphis Savings Bank v. Union Bridge & Const. Co., 138 Tenn. 161, 177, 196 S. W. 492; Lewis v. Casenburg, 157 Tenn. 187, 7 S. W. 2d 808, 60 A.L.R. 254; Poor Sisters of St. Francis v. Long, 190 Tenn. 434, 230 S. W. 2d 659.

"The maxim *res ipsa loquitur* means that the facts of the occurrence evidence negligence; the circumstances unexplained justify an inference of negligence. In the principle of proof employed, a case of *res ipsa loquitur* does not differ from an ordinary case of circumstantial evidence. *Res ipsa loquitur* is not an arbitrary rule but rather 'a common sense appraisal of the probative value of circumstantial evidence.' Boykin v. Chase Bottling Works, 32 Tenn. App. 508, 520-523, 222 S. W. 2d 889, 896.

"This maxim does not generally apply to motor vehicle accidents, but it may apply to such an accident where the circumstances causing it were within the driver's control and the accident was such as does not usually occur without negligence. So where a motor vehicle, without apparent cause, runs off the road and causes harm, the normal inference is that the driver was negligent, and *res ipsa loquitur* is usually held to apply.

"Some of the authorities supporting this view are: Tabler v. Perry, 337 Mo. 154, 85 S. W. 2d 471; Adams v. LeBow, 236 Mo. App. 899, 160 S. W. 2d 826; Masten v. Cousins, 216 Ill. App. 268; Smith v. Kirby, 115 N.J.L. 225, 178 A. 739; Kinary v. Taylor, 243 App. Div. 651, 276 N.Y.S. 688; cf. Galbraith v. Busch, 267 N.Y. 230, 196 N.E. 36; 9 Blashfield, Cyclopedia of Automobile Law (1941 Ed.) sec. 6045; 5 Am. Jur., Automobiles, sec. 608; Annotation, 93 A.L.R. 1101."

The charge given fully protected the rights of the defendant and was an adequate statement of the law applicable in such cases.

■ And too the facts of this case, accepted by the jury, bring it squarely within the above quoted statement of Judge Felts, "where a motor vehicle, without apparent cause, runs off of the road and causes harm, the normal inference is that the driver was negligent, and *res ipsa loquitur* is usually held to apply."

Further, in Sullivan v. Crabtree, supra, it is said:

"It is true there has been confusion in the cases as to the procedural effect of *res ipsa loquitur,* some cases giving it one and some another of these three different effects:

"(1) It warrants an *inference* of negligence which the jury may draw or not, as their judgment dictates. Poor Sisters of St. Francis v. Long, 190 Tenn. 434, 442-443, 230 S. W. 2d 659; Boykin v. Chase Bottling Works, 32 Tenn. App. 508, 522-523, 222 S. W. 2d 889.

"(2) It raises a *presumption* of negligence which requires the jury to find negligence if defendant does not produce evidence sufficient to rebut the presumption. Gill v. Brown, 130 Tenn. 174, 178, 169 S. W. 752; Kay v. Metropolitan Street R. Co., 163 N.Y. 447, 57 N.E. 751; Prosser on Torts, 304; cf. Foltis, Inc. v. City of New York, 287 N.Y. 108, 38 N. E. (2d) 455, 153 A.L.R. 1122; Annotation, 153 A.L.R. 1134.

"(3) It not only raises such a presumption but also *shifts the ultimate burden of proof* to defendant and requires him to prove by a preponderance of all the evidence that the injury was not caused by his negligence. Turnpike Co. v. Yates, 108 Tenn. 428, 434, 67 S. W. 69; Gorsuch v. Swan, 109 Tenn. 36, 69

S. W. 1113, 97 Am. St. Rep. 836; Prosser on Torts, 304, 305.

"For a review of the numerous cases and a clear and helpful discussion of the subject, see: Prosser, The Procedural Effect of Res Ipsa Loquitur (1936), 20 Minn. L. Rev. 241-271; Prosser, Res Ipsa Loquitur in California (1949), 37 Cal. L. Rev. 183-234; Prosser on Torts (1941), 291-310.

"The effect of a case of *res ipsa loquitur,* like that of any other case of circumstantial evidence, varies from case to case, depending on the particular facts of each case; and therefore such effect can no more be fitted into a fixed formula or reduced to a rigid rule than can the effect of other cases of circumstantial evidence. The only generalization that can be safely made is that, in the words of the definition of *res ipsa loquitur,* it affords 'reasonable evidence,' in the absence of an explanation by defendant, that the accident arose from his negligence.

"The weight or strength of such 'reasonable evidence' will necessarily depend on the particular facts of each case, and the cogency of the inference of negligence from such facts may of course vary in degree all the way from practical certainty in one case to reasonable probability in another.

"In exceptional cases the inference may be so strong as to require a directed verdict for plaintiff, as in cases of objects falling from defendant's premises on persons in the highway, such as Byrne v. Boadle (1863), 2 H. & C. 720, 159 Eng. Reprint 299 (a barrel of flour fell from a window of defendant's warehouse); McHarge v. M.M. Newcomer & Co., 117 Tenn. 595, 100 S.W. 700, 9 L.R.A., N.S., 298 (an awning roller fell from defendant's building); and

Turnpike Co. v. Yates, supra (a toll gate or pole fell on a traveler; cf. Annotation, 153 A.L.R. 1134.

"In the ordinary case, however, *res ipsa loquitur* merely makes a case for the jury—merely permits the jury to choose the inference of defendant's negligence in preference to other permissible or reasonable inferences.

"North Memphis Savings Bank v. Union Bridge & Const. Co., 138 Tenn. 161, 188, 196 S.W. 429; John Bouchard & Sons Co. v. Keaton, 9 Tenn. App. 467, 480-481; Boykin v. Chase Bottling Works, 32 Tenn. App. 508, 523, 222 S.W.2d 889; Poor Sisters of St. Francis v. Long, 190 Tenn. 434, 442-443, 230 S.W.2d 659; Prosser, Res Ipsa Loquitur in California, 37 Cal. L.Rev. 183, 217-225."

It will be noted that Judge Davis charged that the unexplained acts "merely warrants an inference of negligence which the jury may or may not draw as its judgment under all the facts and circumstances may dictate. It merely permits the jury to consider and choose the inference of defendant's negligence, if any, in preference to other permissible and reasonable inferences."

■ ■ But it is argued that the doctrine of *res ipsa loquitur* cannot apply in that it was charged that the truck was unattended. We think the proof justified a finding to this effect, but if in error as to this there is applicable the rule stated in Bouchard & Sons Co. v. Keaton, 9 Tenn. App. 467, where it is said:

"But where res ipsa loquitur applies it is not necessary to point out specific acts of negligence in the pleadings, and, if specific acts of negligence are pleaded in such case, such pleading is, under the practice in this State, merely surplusage. Nashville Interurban Railway v. Gregory, 137 Tenn. 422, 433,

193 S.W. 1053; Northcross v. [Loew's Memphis] Theatre Co., 3 Tenn. App. 51-58.

" 'Where the particular thing causing the injury has been shown to be under the management of the defendant or his servant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from a want of care.' Annotation, L.R.A. 1917E, p. 9, and cases there cited."

■ It is urged that as the City was engaged in a governmental function (cleaning of streets) and as its insurance carrier did not agree that would not defend any suit on the ground that the city was engaged in a governmental function, there is, therefore, no liability, citing and relying upon City of Kingsport v. Lane, 35 Tenn. App. 183, 243 S. W. (2d) 289, 290, wherein we said:

"It is averred the City had taken out liability insurance in the sum of $5,000.00 to protect it against tort claims by reason of the operation of said park, and the insurer, Globe Indemnity Co., agreed not to defend any such suit on the ground the City was engaged in a governmental function. *This allegation was necessary in view of the holding of our courts that the operation of a park is a governmental function with resultant immunity.*" (Italics supplied.)

The sentence *italicized* had reference to the existence of insurance as constituting a waiver of the defense of immunity, as will be seen from cases cited, viz., City of Nashville v. Burns, 131 Tenn. 281, 174 S. W. 1111, L. R. A. 1951D, 1108; Rector v. City of Nashville, 23 Tenn. App. 495, 134 S. W. (2d) 892; and Williams v. Town of

Morristown, 32 Tenn. App. 274, 222 S. W. (2d) 607, 614. In the Williams case, supra, it was said, "It would be an entirely useless gesture and waste of public funds for a municipality to carry liability insurance to protect it in tort actions incurred in connection with its governmental acts if it were required to plead and set up governmental immunity as a defense. The more equitable rule, sanctioned by reason and common sense, would be to permit plaintiff to plead and prove that defendant carried liability insurance; then limit the judgment to such coverage. That seems to us to be a reasonable extension of the rules already announced by our courts."

This is what happened in the case at bar; there was no error.

■ It is assigned as error that the court in giving the following special request, "The mere occurrence of an accident with a motor vehicle or the infliction of injury is not proof of the driver's negligence, but such negligence, if any, must be proved by affirmative preponderance of the evidence", added to it these words, *"which may be done by the methods heretofore pointed out to you"*. (Italics supplied.) In the general charge, in addition to that hereinbefore quoted, the Court said:

"Plaintiffs may make out their case by direct evidence or by circumstantial evidence or by a combination of both. It is sufficient in a civil case depending on circumstantial evidence for the party having the burden of proof to make out the more probable hypothesis, and the evidence need not arise to that degree of certainty which will exclude every other reasonable conclusion. However, where two or more equally probable hypotheses appear and either could equally have been the cause of the injury and damage,

the jury cannot speculate or guess or surmise that any certain one was the cause and cannot find for the plaintiff on such basis.''

The jury was also told that if the evidence preponderated in favor of the defendant or if equally balanced, then the case of the plaintiffs would fail. The rights of the defendant were fully protected.

It is assigned as error that the Court erred in not giving the following special request:

''I charge you that you cannot apply the doctrine of *res ipsa loquitur* if you can draw a reasonable inference from the evidence that the alleged damages to plaintiffs' building were due to anything other than the negligence of the truck.''

We have heretofore quoted the general charge on *res ipsa loquitur*. It fully stated the law applicable and gave the jury full latitude in passing upon the question of negligence. This assignment is overruled.

It is also assigned as error that the court failed to grant the following special request:

''I further instruct you that you cannot apply the doctrine of *res ipsa loquitur* in this case unless it appears the defendant has knowledge superior to that of the plaintiffs, as to the cause of the accident.''

In the general charge before quoted it was said that if ''the accident is such as in the ordinary course of things does not happen if those who have the control and management use proper care, it affords reasonable evidence, *in the absence of explanation by the defendant,* that the accident arose from want of care.'' (Emphasis supplied.)

The superior knowledge was not that of the governing body of the City, nor of the citizens thereof, but was that of the employee, Mr. Thompson, who was acting in the

regular course of his employment. So far as this record shows, he was the only person who was in a position to know what happened; but he is dead. We cannot believe that his death deprived the plaintiffs of the right to invoke the doctrine of *res ipsa loquitur*.

We find no error in the record.

The judgment below is affirmed, with interest. Cost against plaintiff in error.

Affirmed.

McAmis, P. J., and Howard, J., concur.